UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| PGI POLYMER, INC., | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 3:15-cv-00214 |
| CHURCH & DWIGHT CO., INC., KARMIN GROUP a/k/a Le GROUPE KARMIN, KARMIN INDUSTRIES, C&S WHOLESALE GROCERS, INC., and BI-LO, LLC, | ) |
| Defendants. | ) |

**BRIEF IN SUPPORT OF
PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

Plaintiff PGI Polymer, Inc., requests a preliminary injunction to stop Defendants from unlawfully copying its federally registered Wavy Lines trademark for non-woven fabrics, which PGI and its predecessors have owned and used since the 1940's. PGI earns millions of dollars annually from selling non-woven fabrics bearing this trademark directly to customers and from authorizing major companies such as the Clorox Company to sell goods bearing the mark.

The Court immediately should enjoin the Defendants' infringement of PGI's Wavy Lines Mark. Defendants use an identical mark on identical goods, so Plaintiff has a high likelihood of success on the merits of this case. In addition, the Defendants' continued sales of infringing goods to thousands of unsuspecting retail consumers would inflict irreparable harm on PGI and its reputation. This potential harm and PGI's high likelihood of success on the merits of its infringement claim make a preliminary injunction appropriate.

1

**Table of Contents**

I.   Factual Background ................................................................................................. 3
   A.   Comparison of the Marks at Issue ................................................................... 3
   B.   PGI's Federally Registered Wavy Lines Mark ................................................ 4
   C.   The Defendants' Unlawful Acts ...................................................................... 5

II.  Argument .................................................................................................................. 6
   A.   Standard for a Motion for Preliminary Injunction ........................................... 6
   B.   PGI is likely to succeed on the merits of its claims. ........................................ 6
      1.   PGI owns a valid and protectable mark. ...................................................... 7
      2.   Defendants use a colorable imitation or counterfeit of the Wavy Lines Mark in commerce without PGI's consent. ................................................................ 7
      3.   Defendants' use of their wavy-lines design is likely to cause confusion. ........ 8
   C.   PGI is likely to suffer irreparable harm without preliminary relief. ..................... 13
   D.   The balance of equities tips in PGI's favor. ..................................................... 15
   E.   An injunction serves the public interest. .......................................................... 16

III. Conclusion ............................................................................................................... 16

## I. FACTUAL BACKGROUND

### A. Comparison of the Marks at Issue

PGI owns a federally registered trademark for a design made up of wavy lines extending in contrasting colors along the surface of non-woven fabric goods such as reusable wipes. [Compl. ¶ 10 and Exh. D; Declaration of Sean Imlay, Vice President, Wipes Segment Lead for Plaintiff PGI, attached hereto as Exhibit G (hereinafter "Pl. Decl.") ¶ 12]. This is an example of a non-woven fabric bearing this Wavy Lines Mark:



[Compl. ¶ 12; Pl. Decl. ¶ 4].

The Defendants recently have started producing reusable wipes covered with an identical wavy-line pattern in contrasting colors, depicted below (the "Infringing Goods"):



[Compl. ¶ 23; Declaration of Neal B. Hayes attached hereto as Exhibit H (hereinafter, "Hayes Decl.") ¶ 5].

## B. PGI's Federally Registered Wavy Lines Mark

PGI and its predecessors in interest have used the Wavy Lines Mark continuously in the United States since at least as early as March 1942, before any Defendant used a "wavy lines" design for non-woven fabrics. [Compl. ¶ 10; Pl. Decl. ¶ 4]. The Wavy Lines Mark was first owned by Johnson & Johnson, which applied to register the Mark with the U.S. Patent and Trademark Office (the "PTO") on June 21, 1972. The PTO registered the Wavy Lines Mark as U.S. Reg. No. 1,175,550 ("the '550 Registration") on October 27, 1981. [Compl. ¶ 20 and Exh. D]. The registration certificate describes the Wavy Lines Mark as follows:

> *The mark consists of a design made up of wavy lines continuously extending across the entire surface of the goods, the lines being of a color which is readily discernible against the background upon which the trademark appears. The design in its entirety is the essential feature of the mark, no particular color or combination of colors being significant.*

[Exh. D].

The '550 Registration was ultimately assigned to PGI [Compl. at ¶ 20; Pl. Decl. ¶ 12], which since has invested millions of dollars in maintaining and promoting the Mark [Compl. ¶ 13; Pl. Decl. ¶ 5]. PGI advertises and markets its non-woven fabrics bearing the Wavy Lines

Mark in many different ways, including direct sales, trade shows, catalogs, brochures, and the Internet. [Compl. ¶ 13; Pl. Decl. ¶ 6]. These efforts allow PGI and its related companies to sell over 10 million dollars' worth of goods bearing the Wavy Lines Mark each year. [Compl. ¶ 15; Pl. Decl. ¶ 8]. They also have earned substantial goodwill for PGI. [Compl. ¶ 14; Pl. Decl. ¶ 7]. Both restaurant-industry professionals and public consumers favorably recognize and rely upon the Wavy Lines Mark as an indication of high-quality non-woven fabrics. [Compl. ¶ 14; Pl. Decl. ¶ 7].

Through its related company, Chicopee, Inc. ("Chicopee"), PGI sells non-woven-fabric goods bearing the Wavy Lines Mark to commercial customers. [Compl. ¶ 16; Pl. Decl. ¶ 10.] Chicopee offers those goods in several colors, including green-on-white (depicted in Section I.A above), blue-on-white, red-on-white, and yellow-on-white, and it sells them in packaging bearing the Chix® trademark. [Compl. ¶ 16 and Exh. A; Pl. Decl. ¶ 10].

PGI also has earned significant revenue from selling large quantities of non-woven fabrics bearing the Wavy Lines Mark to third parties that package, distribute, and sell the goods. [Compl. ¶ 18; Pl. Decl. ¶ 11]. For example, Plaintiff sells non-woven fabrics bearing the Wavy Lines Mark in blue-on-white to its customer and authorized user, The Clorox Company. [Compl. ¶ 19; Pl. Decl. ¶ 11]. Clorox, in turn, sells those goods in packaging bearing the Handi Wipes® trademark. [Compl. Exh. C; Pl. Decl. ¶ 11].

C.   **The Defendants' Unlawful Acts**

According to Defendant Church & Dwight's website, Church & Dwight is a $2.6 billion company from New Jersey that markets to customers in 115 countries. [Hayes Decl., Exhibits H1 and H2]. Church & Dwight licenses its ARM & HAMMER® brand to the Canadian Defendant Karmin Group [*See* Compl. ¶ 25], which is known in the French of its native Québec as *Le Groupe Karmin*. [Hayes Decl., Exh. H3]. Through its wholly owned

5

subsidiary Defendant Karmin Industries [*See* Compl. ¶ 24], the Karmin Group manufactures and distributes goods to wholesalers [Hayes Decl., Exh. H3], including Defendant C&S Grocers, the largest grocery wholesaler in the United States. [Id. at Exh. H4]. The approximately 5,000 stores C&S serves include the groceries of BI-LO, LLC [Id.], a chain with over 200 stores throughout Georgia, Tennessee, and the Carolinas. [Id. at Exh. H5].

The Defendants have begun using a wavy-lines design on their own Infringing Goods made of non-woven fabric. [Compl. ¶ 23 and Exh. F]. PGI has not licensed, authorized, or consented for Defendants to use its Wavy Lines Mark. [Compl. ¶ 31; Pl. Decl. ¶ 13].

## II.     ARGUMENT

### A.     Standard for a Motion for Preliminary Injunction

In order to obtain a preliminary injunction, a plaintiff "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *WV Ass'n of Club Owners & Fraternal Services, Inc. v. Musgrave*, 553 F.3d 292, 298 (4th Cir. 2009) (*quoting Winter v. Natural Res. Defense Council, Inc.*, 555 U.S. 7, 20 (2008)). PGI can establish all these elements.

### B.     PGI is likely to succeed on the merits of its claims.

To prevail on a trademark infringement claim, the plaintiff must show that it owns a valid and protectable mark, that the defendants used a "re-production, counterfeit, copy, or colorable imitation" of that mark in commerce without the plaintiff's consent, and that use of the mark is likely to cause confusion. *Swatch AG v. Beehive Wholesale, LLC*, 739 F.3d 150, 158 (4th Cir. 2014). As one district court in this circuit remarked, the test for liability for unfair competition—PGI's second claim—is "virtually the same test as that for trademark infringement." *Polo Fashions, Inc. v. Gordon Grp.*, 627 F. Supp. 878, 891 (M.D.N.C. 1985)

6

(also awarding summary judgment for the plaintiff on its unfair competition claim based on the analysis of the plaintiff's infringement claim). To obtain a preliminary injunction, Plaintiff must show a likelihood of success with respect to each of these elements. *See, e.g., Rebel Debutante LLC v. Forsythe Cosmetic Group, Ltd.*, 799 F. Supp. 2d 558, 568 (M.D.N.C. 2011).

### 1. PGI owns a valid and protectable mark.

PGI owns the '550 Registration, a federal trademark registration for its Wavy Lines Mark. [Compl. Exh. D]. The PTO has accepted the Combined Declaration of Use and Incontestability for the Wavy Lines Mark. [Compl. ¶ 21 and Exh. E; Pl. Decl. ¶ 12]. Pursuant to 15 U.S.C. § 1065, submission of such an affidavit completes the process that makes the right to use a trademark incontestable. Because PGI's rights in its Wavy Lines Mark are incontestable, the '550 Registration provides conclusive evidence of the validity and registration of the Wavy Lines Mark, of PGI's ownership of the Mark, and of PGI's exclusive right to use the Mark in commerce. 15 U.S.C. § 1115(b). Therefore, PGI is likely to establish the first element of its claim, ownership of a valid and protectable trademark.

### 2. Defendants use a colorable imitation or counterfeit of the Wavy Lines Mark in commerce without PGI's consent.

The Lanham Act defines a "colorable imitation" as "any mark which so resembles a registered mark as to be likely to cause confusion or mistake or to deceive." 15 U.S.C. § 1127. The Lanham Act defines *counterfeit* as "spurious mark which is identical with, or substantially indistinguishable from, a registered mark." *Id*. Federal courts determine whether one mark is a colorable imitation of another by deciding whether the two marks have "similarity in sight, sound, and meaning which would result in confusion." *George & Co. LLC v. Imagination Entm't Ltd.*, 575 F.3d 383, 396 (4th Cir. 2009) (internal citations omitted); *see*

*also Sara Lee Corp. v. Kayser–Roth Corp.*, 81 F.3d 455, 465 (4th Cir. 1996) (noting that the two marks at issue, though not identical, were "perceived similarly by the eye and ear"); 4 *McCarthy on Trademarks and Unfair Competition* § 23:21 (4th ed.) (noting that the degree of similarity between marks is tested on three levels as encountered in the marketplace: sight, sound, and meaning).

The Defendants' Infringing Goods qualify as both colorable imitations and counterfeits. Pictures of the parties' products appear on pages 3 and 4 above, and they show that the pattern on Defendants' goods is identical to Plaintiff's Wavy Lines Mark. Several design features contribute to the confusing visual similarity. Both parties' products feature a repeating pattern of thin, undulating lines of alternating colors. The wavy lines stretch across the entire surface of both parties' products. Finally, the wavy lines on any one product all have the same two alternating colors.

These ample similarities render the Defendants' wavy-lines design "substantially indistinguishable from," and "likely to cause confusion" with, PGI's Wavy Lines Mark. For these reasons, the Infringing Goods qualify as both counterfeits and colorable imitations. In addition, PGI has not given consent to Defendants to use its Wavy Lines Mark. [Compl. ¶ 31; Pl. Decl. ¶ 13]. Therefore, PGI has demonstrated a likelihood of success in the second element of its claim—showing that Defendants used a colorable imitation or counterfeit of the Wavy Lines Mark in commerce without PGI's consent.

### 3. Defendants' use of their wavy-lines design is likely to cause confusion.

In addition to determining whether the similarities between two marks are likely to cause confusion, courts ask whether a defendant's use of the mark is likely to cause confusion

with the plaintiff's use of its mark. This question is the third element of PGI's claim, and it is known as the "likelihood of confusion" test.

Under this test, "A likelihood of confusion exists if the defendant's actual practice is likely to produce confusion in the minds of consumers about the origin of the goods or services in question." *George & Co.*, 575 F.3d at 393 (citation and internal quotation marks omitted). Courts conduct this test by analyzing "how the two parties actually use their marks in the marketplace to determine whether the defendant's use is likely to cause confusion." *Id.* (quoting *CareFirst of Maryland, Inc. v. First Care, P.C.*, 434 F.3d 263, 267 (4th Cir. 2006)).

In the Fourth Circuit, this likelihood-of-confusion analysis involves nine factors: "(1) the strength or distinctiveness of the plaintiff's mark as actually used in the marketplace; (2) the similarity of the two marks to consumers; (3) the similarity of the goods or services that the marks identify; (4) the similarity of the facilities used by the markholders; (5) the similarity of advertising used by the markholders; (6) the defendant's intent; (7) actual confusion; (8) the quality of the defendant's product; and (9) the sophistication of the consuming public." *Id.* (*citing Pizzeria Uno Corp. v. Temple*, 747 F.2d 1522, 1527 (4th Cir. 1984) (setting forth factors one through seven); *Sara Lee,* 81 F.3d at 463–64 (identifying factors eight and nine)). The factors are not of equal importance, nor are they all relevant in every case. *George & Co.*, 575 F.3d at 393; (quoting *Anheuser–Busch, Inc. v. L & L Wings, Inc.*, 962 F.2d 316, 320 (4th Cir. 1992) (the *Pizzeria Uno* factors are "only a guide—a catalog of various considerations that may be relevant in determining the ultimate statutory question of likelihood of confusion")). Moreover, not every factor needs to support Plaintiff's position. *Synergistic Int'l, LLC v. Korman*, 470 F.3d 162, 171 (4th Cir. 2006) (citing *Pizzeria Uno*, 747

F.2d at 1527); *see also Toolchex, Inc. v. Trainor*, 634 F. Supp. 2d 586, 594 (E.D. Va. 2008). ("[A]n injunction may be warranted even if some of those factors do not favor the plaintiff.")

### a) PGI's Wavy Lines Mark is strong.

Courts assess the strength of a trademark by determining its conceptual strength and commercial strength. *CareFirst*, 434 F.3d at 269 (4th Cir. 2006). A mark's conceptual strength depends on its "linguistic or graphical 'peculiarity.'" *Id.* (internal citation omitted). When, as in this case, the trademark is a design, not a word, "peculiarity" depends on whether the mark involves simple geometric shapes or unusual shapes. *See* 1 *McCarthy on Trademarks and Unfair Competition* § 7:34. Simple geometric shapes are weaker marks. *See, e.g.*, *Apple Growers Ass'n v. Pelletti Fruit Co.*, 153 F. Supp. 948 (D. Cal. 1957); *Marcalus Mfg. Co. v. Watson*, 258 F.2d 151 (D.C. Cir. 1958) (oval); *Jenkins Bros. v. Newman Hender & Co.*, 289 F.2d 675 (C.C.P.A. 1961) (diamond); *Dow Corning Corp. v. Applied Power Industries, Inc.*, 322 F. Supp. 943 (N.D. Ill. 1970) (rectangle). By contrast, an uncommon design is "a 'strong' mark entitled to a wide scope of protection." 1 McCarthy on Trademarks and Unfair Competition § 7:34 (citing *American Sunbathing Ass'n v. American Health Alliance*, 157 U.S.P.Q. 586 (T.T.A.B. 1968) (sunburst); *Permatex Co. v. California Tube Products, Inc.*, 175 U.S.P.Q. 764 (T.T.A.B. 1972) (dark circle with white lines curving into the center).

PGI's Wavy Lines Mark is unusual. Its core components are sinuating lines of alternating colors, which are not simple geometric shapes such as "ovals", "diamonds", or "rectangles". And the Wavy Lines Mark is not just a single unusual figuration—it is an unusual figuration that repeats over the entire surface of the goods. Because PGI's Wavy Lines Mark is an uncommon design, it is conceptually strong.

The next source of a mark's strength is commercial strength. *CareFirst*, 434 F.3d at 269. In the Fourth Circuit, courts use six factors to evaluate commercial strength: "(1) the plaintiff's advertising expenditures; (2) consumer studies linking the mark to a source; (3) the plaintiff's record of sales success; (4) unsolicited media coverage of the plaintiff's business; (5) attempts to plagiarize the mark; and (6) the length and exclusivity of the plaintiff's use of the mark." *George & Co.*, 575 F.3d at 395 (citing *Perini Corp. v. Perini Const., Inc.*, 915 F.2d 121, 125 (4th Cir. 1990)).

The *Perini* factors weigh in favor of PGI:

- *Plaintiff's advertising expenditures*: PGI has spent millions of dollars advertising goods bearing the Wavy Lines Mark. [Compl. ¶ 13; Pl. Decl. ¶ 5].

- *Plaintiff's record of sales success*: PGI generates approximately 10 million dollars in annual revenue from the Wavy Lines Mark and the products connected to it. [Compl. ¶ 15; Pl. Decl. ¶ 8].

- *Length and exclusivity of Plaintiff's use*: The Wavy Lines Mark has been in use for more than seven decades. [Compl. ¶ 10 and Exh. D; Pl. Decl. ¶ 4].

All these factors confirm that the Wavy Lines Mark is commercially strong. Because the Wavy Lines Mark is both commercially and conceptually strong, the first factor in the likelihood of confusion test—strength of the mark—favors PGI.

### b) PGI's Wavy Lines Mark and Defendants' wavy-lines design appear almost identical to consumers.

The pictures on pages 3 and 4 above show that PGI's Wavy Lines Mark and the Defendants' wavy-line design are identical. As explained on pages 8 and 9 above, the marks share the same features: repeating patterns of thin, undulating lines of alternating colors across the entire surface of the goods. The second factor—similarity to consumers—clearly weighs in PGI's favor.

### c) PGI's Wavy Lines Mark and Defendants' wavy-lines design are used on the same, or virtually identical, goods.

Both PGI's Wavy Lines Mark and Defendants' wavy-lines design appear on non-woven fabrics, and, specifically, on reusable wipes. The identical nature of the goods' function and material heavily tilts the third factor—similarity of the goods—in favor of PGI.

### d) Goods bearing the Wavy Lines Mark and Defendants' Infringing Goods use substantially similar facilities.

Courts find substantial similarity between the facilities in which two parties sell their goods when both parties sell in retail stores. *See, e.g., George & Co.*, 575 F.3d at 397 (finding no error in the district court's assessment that the "parties competed in a similar manner in overlapping markets" when both parties sold their goods online and in retail stores). The Defendants distribute and sell their goods to the public in large chain stores; in fact, Defendant BI-LO owns hundreds of such stores. PGI's goods bearing the Wavy Lines Mark also are sold in large retail chains such as Walgreens. [Hayes Decl., Exh. H6]. This similarity is another factor that weighs in PGI's favor by making confusion likely.

### e) PGI and Defendants likely use substantially similar advertising.

PGI has not conducted discovery, so it has limited knowledge of the Defendants' advertising. It does know that Defendants promote their Infringing Goods through the Internet. [Compl. Exh. F]. PGI's goods also are advertised and sold online. [Hayes Decl., Exh. H6]. In the absence of evidence that the parties' marketing is dissimilar and due to the similarities in the channels of trade through which the Plaintiff's products and the Defendants' Infringing Goods flow, the similarity-of-advertising factor favors Plaintiff.

### f) The sophistication of the consumers of the products is similar.

The analysis of this factor follows from the analysis of facilities in which the goods are sold. Both parties' goods are low-cost items sold at retail. Thus, the sophistication of the consumers of both parties' goods is identical: a retail consumer purchasing a low-cost item. Further, that sophistication is not great. People do not deliberate extensively about reusable wipes; they walk down the aisle and grab products that look familiar and trustworthy. This factor also demonstrates likelihood of confusion.

### g) Most of the likelihood-of-confusion factors favor PGI.

At least six of the nine factors pertinent to likelihood of confusion favor PGI. Right now, before discovery, PGI lacks reliable information on the other three factors. Perhaps they also favor PGI, but whether they do should not change this case. A plaintiff does not need to establish every factor in order to show likelihood of confusion. *Synergistic Int'l,* 470 F.3d at 171. PGI already has established most of the factors, so it has shown that confusion between its Wavy Lines Mark and the Defendants' wavy-lines design is likely. And because PGI Polymer is likely to establish all three elements of its claim—ownership of a valid and protectable mark, unlawful use by the Defendants, and likelihood of confusion—it is likely to succeed on the merits.

### C. PGI is likely to suffer irreparable harm without preliminary relief.

When a court in the Fourth Circuit considers a Lanham Act case, "a presumption of irreparable injury is generally applied once the plaintiff has demonstrated a likelihood of confusion, the key element in an infringement case." *Scotts Co. v. United Indus. Corp.*, 315 F.3d 264, 273 (4th Cir. 2002); *Rebel Debutante*, 799 F. Supp. 2d at 579 (noting that the presumption has not changed in light of the Supreme Court's holding in *eBay Inc. v.*

*MercExchange, L.L.C.,* 547 U.S. 388 (2006)). This presumption is appropriate because, as Professor J. Thomas McCarthy explains in his pre-eminent trademark treatise, "once the trademark owner shows a probability of proving a likelihood of confusion at trial, then the trademark owner's business reputation and goodwill are at risk." 5 *McCarthy* § 30:46.

However, even without affording Plaintiff the benefit of this presumption, the evidence demonstrates that PGI will suffer irreparable harm but for issuance of the injunction. The Fourth Circuit Court of Appeals has recognized that "regardless of any potential injury to sales or to the mark itself, trademark infringement primarily represents an injury to reputation." *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Virginia, Inc.*, 43 F.3d 922, 939 (4th Cir. 1995). It has also endorsed the words of a District Court in this Circuit, which wrote that infringement "gives rise to irreparable injury, in that plaintiff has lost control of its business reputation to this extent, there is substantial likelihood of confusion of the purchasing public, there may be no monetary recovery available, and there is an inherent injury to the good will and reputation of the plaintiff." *Id.* (citing *Philip Morris Inc. v. MidWest Tobacco Inc.*, 9 U.S.P.Q.2d 1210, 1215, 1988 WL 150693 (E.D. Va. 1988) (quoting *Long John Silver's Inc. v. Washington Franchise, Inc.*, 209 U.S.P.Q. 146, 149, 1980 WL 30249 (E.D. Va. 1980)).

Here, Defendants are using an identical mark on identical goods, and not just any goods, but low-cost goods for which a consumer will not engage in a sophisticated purchase. Further, Plaintiff's reusable wipes—though reusable for a certain number of uses—are intended to be repeat purchases. If a consumer purchases Defendants' goods, thinking that he or she is purchasing Plaintiff's goods with which he or she is familiar, and has a negative experience due to product quality, Plaintiff likely will lose not just the one sale but all future sales from that consumer. Still further, Plaintiff likely will not be able to identify and remedy

the damage to its reputation because of the impossibility of *post hoc* identification of purchasers of such low-cost goods.

Because damage to reputation and goodwill are very difficult to quantify, fully compensating trademark owners for such damage is almost impossible. As the Seventh Circuit Court of Appeals has noted, "[I]rreparable harm is especially likely in a trademark case because of the difficulty of quantifying the likely effect on a brand of a nontrivial period of consumer confusion (and the interval between the filing of a trademark infringement complaint and final judgment is sure not to be trivial)." *Kraft Foods Group Brands LLC v. Cracker Barrel Old Country Store, Inc.*, 735 F.3d 735, 741 (7th Cir. 2013).

In short, whether the Court presumes irreparable harm to PGI because confusion is likely or evaluates the circumstances of this case, it is highly likely that Defendants' conduct is likely to damage PGI's reputation and goodwill, and that damage will be very difficult to quantify. Because there is no evidence to the contrary, PGI has established the likelihood of irreparable harm that is a prerequisite for the preliminary injunction it requests.

### D. The balance of equities tips in PGI's favor.

Courts considering preliminary injunctions must balance the immediate and irreparable harm to the plaintiff against any harm to the defendant. *Meineke Car Care Centers, Inc. v. Catton*, 3:10-CV-000234-RLV-DSC, 2010 WL 2572875 (W.D.N.C. June 24, 2010). Here, PGI spent millions of dollars and countless hours promoting and selling products using its incontestable Wavy Lines Mark, which has been in use for over seventy years. [Compl. ¶ 10 and Exh. D; Pl. Decl. ¶¶ 4, 5]. Sales and licensing connected to the Wavy Lines Mark generate 10 million dollars annually for PGI. [Compl. ¶ 15; Pl. Decl. ¶ 8].

Again, lack of discovery limits information available to PGI. However, the revenues that Defendants' wavy-lines design generates almost certainly do not match PGI's revenues

from the Wavy Lines Mark. In addition, there is no evidence that the Defendants have been using their wavy-lines design for any length of time even remotely comparable to the Wavy Line Mark's seven decades. Moreover, Defendants collectively are large corporations. Their income from the Infringing Goods likely amounts to a minuscule portion of their overall revenues. And while PGI certainly has other product lines, the impact of harm to PGI will be proportionally much greater than any harm suffered by Defendants. [*See* Pl. Decl. ¶ 9].

### E. An injunction serves the public interest.

Trademarks exist to protect the public from confusion about "the identity of the enterprise from which goods and services are purchased." *Toolchex*, 634 F. Supp. 2d at 594 (quoting *AMP Inc. v. Foy*, 540 F.2d 1181, 1185–86 (4th Cir. 1976)). Preventing trademarks from being used deceptively likewise protects the public and serves the public interest. *Toolchex*, 634 F. Supp. 2d at 594 (citing *Bowe Bell & Howell Co. v. Harris*, 145 F. App'x 401, 404 (4th Cir. 2005) (unpublished) (affirming a grant of a preliminary injunction)). Finally, the public interest is served by protecting the interests of trademark owners. *Toolchex*, 634 F. Supp. 2d at 594 (citing *NaturaLawn of Am., Inc. v. W. Group, LLC*, 484 F.Supp.2d 392, 404 (D. Md. 2007)). Because enjoining Defendants' unlawful use of their wavy-lines design will protect the public from confusion, prevent PGI's Wavy Lines Mark from being used deceptively, and protect PGI's ownership interest in its Wavy Lines Mark, granting an injunction serves the public interest.

## III. CONCLUSION

PGI is likely to succeed on the merits of its claims. It can show both that it owns a valid and protectable mark and that the Defendants used a colorable imitation or counterfeit in commerce without PGI's consent. It also can show that Defendants' use of a wavy-lines design is likely to cause confusion because at least six of the nine relevant factors favor PGI.

PGI also has established that it will suffer irreparable harm. Finally, the equities tip in PGI's favor, and an injunction would serve the public interest. Therefore, PGI requests that the Court grant its Motion for Preliminary Injunction in full and without delay.

Dated: May 8, 2015

s/ Jason M. Sneed
Jason M. Sneed, Esq. (NC Bar No. 29593)

SNEED PLLC
610 Jetton St., Suite 120-107
Davidson, North Carolina 28036
Tel.: 704-779-3611
Email: JSneed@SneedLegal.com

*Attorney for Plaintiff PGI Polymer, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on May 8, 2015, I electronically filed the foregoing *Brief in Support of Plaintiff's Motion for Preliminary Injunction* with the Clerk of Court using the CM/ECF system. I further certify that the foregoing document will be served contemporaneously with the Complaint pursuant to Fed.R.Civ.P. 4.

                                          s/ Jason M. Sneed
                                          Jason M. Sneed, Esq. (NC Bar No. 29593)

                                          SNEED PLLC
                                          610 Jetton St., Suite 120-107
                                          Davidson, North Carolina 28036
                                          Tel.: 704-779-3611
                                          Email: JSneed@SneedLegal.com

                                          *Attorney for Plaintiff PGI Polymer, Inc.*