UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:15-cv-00214-FDW-DSC

PGI POLYMER, INC.,

    Plaintiff/Counterclaim Defendant,

v.

CHURCH & DWIGHT CO., INC., *et al.*,

    Defendants/Counterclaimants.

ORDER GRANTING MOTION FOR PRELIMINARY INJUNCTION

**THIS MATTER** is before the Court on Plaintiff's Motion for Preliminary Injunction (Docket No. 2). Upon consideration of the parties' briefs and the evidence and testimony presented at the preliminary injunction hearing on September 21, 2015, the Court grants the Plaintiff's motion and preliminarily enjoins the conduct of Defendants Church & Dwight Co., Inc. ("Church & Dwight"); Karmin Group, Karmin Industries (collectively, "the Karmin Parties"), and BI-LO, LLC ("LLC") as set forth in the following order.

## SUMMARY OF THE FACTS

**A.    Procedural History**

Plaintiff PGI Polymer, Inc. ("PGI Polymer") is a North Carolina corporation with its headquarters in Charlotte. It is a wholly owned subsidiary of AVINTIV Specialty Materials, Inc. ("AVINTIV"), which manufactures non-woven textiles and also is headquartered in Charlotte.

On May 8, 2015, Plaintiff filed a Complaint (Docket No. 1) and a Motion for Preliminary Injunction (Docket No. 2) against Defendants Church & Dwight, the Karmin Parties, and BI-LO.

[Commented [SH1]: Object to Defendants' change as inaccurate – See Docket No. 22, Amended Corporate Disclosure, which reflects that Plaintiff's parent corporation changed its name.]

Plaintiff's complaint included the following four claims, all of which were based on Plaintiff's allegations that the Defendants had unlawfully used its trademark of repeating wavy lines extending across the entire surface of non-woven ~~re-usable wipes~~fabrics (the "Wavy Lines Mark"): 1) Trademark infringement under the Lanham Act, 2) Unfair competition under the Lanham Act, 3) Unfair and deceptive trade practices under North Carolina's statutes, and 4) Common law unfair competition and trademark infringement. Included as a Defendant in this Complaint and Motion was C&S Wholesale Grocers, Inc. ("C&S"), which Plaintiff has since voluntarily dismissed from this litigation (Docket No. 9).

> **Commented [SH2]:** Object to Defendants' change as inaccurate: trademark registration covers a design for fabrics, not re-usable wipes. See Docket No. 1-5 (registration certificate).

After dismissing C&S, PGI Polymer filed a First Amended Complaint adding LaMi Products, Inc. ("LaMi") as a Defendant (Docket No. 13). After receiving the First Amended Complaint, LaMi voluntarily agreed to cease all sales of the allegedly infringing goods during the pendency of this action, so PGI Polymer did not move for a preliminary injunction against LaMi.

The parties met for a preliminary injunction hearing on September 21, 2015~~, When the Court scheduled the hearing it ordered that each side would be given 45 minutes to present their arguments and evidence~~. At the hearing, Plaintiff clarified that it was seeking a preliminary injunction against Church & Dwight, the Karmin Parties, and BI-LO, but not against LaMi. The Defendants against whom the injunction was sought ("the Preliminary Injunction Defendants") were jointly represented by counsel. Both Plaintiff and the Preliminary Injunction Defendants presented ~~limited~~ evidence and argument. Plaintiff presented testimony from two witnesses: Todd Hess, Senior Intellectual Property Counsel for AVINTIV, and Dawn Huston, Director of Product Marketing, Wipes Americas for AVINTIV. In addition to the evidence cited in their brief, Defendants submitted the testimony declarations of Evan Karls, William Mattesky and

> **Commented [SH3]:** Object - irrelevant

> **Commented [SH4]:** Object – irrelevant and inconsistent with the record

Anthony Rentz.

**B.     Findings of Fact**

Plaintiff owns a registration for a trademark for a design made up of wavy lines extending in contrasting colors along the surface of non-woven fabric goods such as reusable wipes (the "Wavy Lines Mark"). Plaintiff's witness testified that Plaintiff and its predecessors in interest have used the Wavy Lines Mark continuously in the United States since at least as early as March 1942, before any Defendant used a "wavy lines" design for non-woven fabrics. According to the United States Patent and Trademark Office records, the Wavy Lines Mark was first owned by Johnson & Johnson, which applied to register the Wavy Lines Mark with the United States Patent and Trademark Office (the "USPTO") on June 21, 1972. On October 27, 1981, the USPTO granted the Wavy Lines Mark registration on its Principal Register as U.S. Reg. No. 1,175,550 ("the '550 Registration"), and Plaintiff claims that this registration eventually was assigned to Plaintiff. The registration certificate depicts and describes the Wavy Lines Mark as follows:

> Commented [SH5]: Object to Defendants' change - this term needs to be defined.

*The mark consists of a design made up of wavy lines continuously extending across the entire surface of the goods, the lines being of a color which is readily discernible against the background upon which the trademark appears. The design in its entirety is the essential feature*

*of the mark, no particular color or combination of colors being significant.*

Products bearing the Wavy Lines Mark generate significant revenue annually for Plaintiff. Through its related company, Chicopee, Inc. ("Chicopee"), Plaintiff sells non-woven-fabric goods bearing the Wavy Lines Mark to commercial customers. Chicopee offers those goods in several colors to its commercial customers, including green-on-white, blue-on-white, red-on-white, and yellow-on-white. Plaintiff sells them in packaging bearing the Chix® trademark. ~~Plaintiff's goods and packaging for its goods do not employ any trademark indicia for the Wavy Line Mark, such as a ® or TM, or include any indication on the goods or the packaging that Plaintiff owns or claims trademark rights in the Wavy Line Mark.~~

Plaintiff also sells large quantities of non-woven fabrics bearing the Wavy Lines Mark to third parties that package, distribute, and sell the goods. For example, Plaintiff sells non-woven fabrics bearing the Wavy Lines Mark to its customer and authorized user, The Clorox Company ("Clorox,"), which, in turn, sells those goods in packaging bearing the Handi Wipes® trademark. ~~The record did not indicate that Plaintiff is the exclusive supplier of the Clorox Handi Wipes product bearing the Wavy Line Mark, nor does the record indicate whether Clorox presently sources or has sourced its wavy line Handi Wipes products from a third party. Plaintiff has not alleged that Clorox is a licensee of the Wavy Line Mark or that PGI exercises any control over how Clorox uses and markets the Clorox products bearing the Wavy Line Mark.~~

The Preliminary Injunction Defendants, for more than three years, have imported, sold, distributed and/or advertised non-woven reusable wipes, which were sold through major retail store chains under the Arm & Hammer® brand, and which employ a green and white wavy-lines design (the "Karmin Product"). Defendant Church & Dwight is the owner of the ARM & HAMMER brand and licensed the ARM & HAMMER brand for use with the Karmin Product.

Comments:
- [SH6]: Object to Defendants' deletion of the description; agree to Defendants' addition of the depiction.
- [SH7]: Object – irrelevant and no evidence was adduced as to this point
- [SH8]: Object to Defendants' proposed deletion and addition to this paragraph as not accurately reflecting the record

~~Church & Dwight did not import, sell, distribute or advertise the Karmin Product~~ [Commented [SH9]: Object – record does not reflect this proposed addition]

Since June 2012, Karmin Industries has sold and distributed over 200,000 units of such wipes in the United States.  The accused ARM & HAMMER wipes had been sold in the United States for approximately three years before Plaintiff pursued this motion for preliminary injunction.  Decl. of E. Karls at ¶ 3.  Plaintiff became aware of the sales of the ARM & HAMMER wipes, including in large chain supermarkets, ~~at least as early as~~ in January, 2015, and four months later sought a preliminary injunction.

~~Plaintiff is not the only entity selling a non-woven, reusable wipe that also contains a design that Plaintiff alleges is the Wavy Line Mark.  A non-party to this lawsuit, 3M has been selling a non-woven, reusable wipe that also contains a design that Plaintiff alleges is the Wavy Line Mark.  The 3M product is sold under the SCOTCH BRITE mark, and is currently being sold in department stores such as Target.  A picture of 3M's SCOTCH BRITE product is depicted below:~~



~~Plaintiff has been aware of the 3M SCOTCH BRITE product since at least 2012, but decided not to pursue a preliminary injunction against 3M and/or Target because Plaintiff did not wish to disturb its "business relationship" with 3M.  During the preliminary injunction hearing,~~

5

Plaintiff's witness admitted that 3M and Target are not authorized to use its Wavy Line Mark in connection with the SCOTCH BRITE non-woven reusable wipes (or any product), and that Plaintiff exercises no control over the quality of the SCOTCH BRITE product, which are being sold.

From approximately July, 2011 and continuing until May, 2015, the large discount retail store, Dollar Tree sold non-woven reusable wipes bearing what Plaintiff contends is its Wavy Line Mark, selling in over 5,000 nationwide retail stores. A. Rentz Decl. at ¶5. Dollar Tree sold its products under the SCRUB BUDDIES brand. A picture of Dollar Tree's product is depicted below:



Defendants also introduced the testimony declaration of Henry William Mattesky. Mr. Mattesky has over 50 years of experience in the textile industries and owns approximately 23 patents in the field of textiles. At the time of his declaration, Mr. Mattesky was the Vice-President of Magla Products, LLC. Mr. Mattesky testified that "use of patterns, including wavy or zig-zag shaped lines, on non-woven home cleaning wipes have been manufactured and sold since at least as early as 1935, and has been the subject of numerous patents. Mattesky Decl. at ¶11. Mr. Mattesky testified that beginning in 2003 and at least until the time of his declaration in August, 2010, Magla sold household cleaning wipes under the MR. CLEAN brand, and said wipes contained a zig-zag pattern. Plaintiff filed suit against Magla claiming that this zig-zag

6

pattern infringed its Wavy Line Mark. Mr. Mattesky testified that "in my 51 years of experience in the textile industry I have found that consumers who purchase household cleaning wipes and similar products make their purchasing decision based on price and a preference for a particular brand, for example, HANDI WIPE, or MR. CLEAN, under which the product is sold" and "the pattern on the fabric is not significant to the consumer." Mattesky Decl. at ¶¶23 and 32.

During the preliminary injunction hearing, Defendant's counsel showed Plaintiff's witness several examples of non-woven, re-usable wipes bearing a wavy line design. Plaintiff's witness testified that Plaintiff was not familiar with these other examples, and that none of these third party products were authorized or licensed by Plaintiff. The Court admitted these examples for the limited purpose of showing that Plaintiff was not aware of, and did not authorize any of these third party products. Defendant's counsel represented that he personally sourced all of these examples, and had personal knowledge of each purchase or website download; the Court declined to admit into evidence these examples, , finding that the Federal Rules of Evidence require that at a preliminary injunction hearing each product needed to be separately authenticated by a knowledgeable witness (other than counsel). The Court declined to permit counsel's affirmation or testimony regarding these examples..

Plaintiff's subsidiary, Chicopee, is the owner of expired US Patent No. 3,009,822 (the "'822 Patent"). The '822 Patent is entitled "Nonwoven Fabrics and Methods for Manufacturing Same." Claim 1 of the '822 Patent claims, in part, "[a] bonded fibrous nonwoven fabric having textile like softness, drape and hand . . . comprising a web of overlapping, intersecting cellulosic fibers; and a . . . binder . . . in a predetermined pattern of spaced binder segments . . ." The specification of the '822 Patent discloses the preferred embodiments of the claimed invention,

7

and the first such embodiment disclosed in the '822 Patent teaches the wavy line design depicted below:



The specification for the '822 Patent discloses that:

> Another well-known bonding method is to print the nonwoven webs with intermittent or continuous straight or wavy lines or areas of binder extending generally transversely or diagonally across the web and additionally, if desired, along the web. The resulting nonwoven fabric as exemplified by a product disclosed in the Goldman Patent 2,039,312 and sold under the trademark "Masslinn" is far more satisfactory as a textile fabric that over-all-impregnated webs in that the softness, drape and hand of the resulting nonwoven fabric nearly approach those of a woven textile fabric.

*See,* Col. 2, ln. 28-39.

The '822 Patent specification also discloses how the wavy line pattern for non-woven wipes disclosed in the Patent is an improvement over the earlier designs. For example, it teaches that the disclosed patterns of the '822 invention, such as the wavy line pattern, improve the earlier designs because the alternative designs produced "a non-woven fabric of good longitudinal and cross strength, acceptable durability and washability, and satisfactory resistance. However, the nonwoven fabric [under the alternative design] tends to be stiff and boardlike, possessing more of the properties and characteristics of paper or board than those of a woven or knitted textile fabric. Consequently, although such over-all impregnated nonwoven fabrics are satisfactory for many uses, they are still basically unsatisfactory as general purpose textile fabrics." *See,* Col. 2, ln. 12-27.

8

Similar teachings can be found in the Mattesky Patent, US Patent No. 5,380,581, which was also cited to, and relied on by the Defendants. The '581 Patent likewise discloses a non-woven fabric which teaches the utilitarian and functional benefits of a wavy line design. The claims of the '581 Patent, including Claim 1, claim that the binder "pattern being at an angle of between at least 10 degrees to not more than 70 degrees relative to the orientation of the majority of the fibers." This is depicted in the Patent's specification which discloses that the claimed invention produces a non-woven fabric with a wavy line design the waves being angled at the claimed amount of between 10 to 70 degrees:



*See*, Fig. 2.

The '581 Patent teaches that this design improves "the physical properties of such fabrics, particularly their tensile strength and toughness defined as the ability of the web to elongate but not tear." *See*, Col. 1, ln. 25-32. Mr. Mattesky, the named inventor of the '581 Patent testified that the '581 Patent was for a non-woven fabric formed with spaced-apart, continuous lines of a binder adhesive applied across the width of the fabric, which resulted in an array of zig-zag patterns resembling cursive 'M's. Mattesky Decl. at ¶ 9.

Plaintiff offers its non-woven fabrics in different designs, with each design used for a product that serves a different function. For example, Plaintiff uses a diamond shape design for

9

~~its non-woven window cleaner fabric, a "dot" design for its non-woven dusting cloths, a yellow uniform design for its lemon oil furniture non-woven cloth, and the wavy line design for its all-purpose non-woven wipes:~~



~~See, Def. Exs. 2-5.~~**CONCLUSIONS OF LAW**

A preliminary injunction is an extraordinary remedy, the primary function of which is to protect the status quo and to prevent irreparable harm during the pendency of a lawsuit. *In re Microsoft Corp. Antitrust Litig.*, 333 F.3d 517, 525 (4th Cir. 2003). Courts evaluating a request for a preliminary injunction "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding such request." *Amoco Prod. Co. v. Vill. of Gambell, Alaska*, 480 U.S. 531, 542 (1987). A plaintiff seeking a preliminary injunction must establish the following four elements: 1) it is likely to succeed on the merits; 2) it is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in its favor; and (4) an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). In this case, all four elements are established.

**A.  Plaintiff is likely to succeed on the merits.**

To prevail on a trademark infringement claim, the plaintiff must show that it owns a valid and protectable mark, that the defendants used a "re-production, counterfeit, copy, or colorable imitation" of that mark in commerce without the plaintiff's consent, and that use of

10

[Commented SH10]: Plaintiff objects to the entirety of Defendants' proposed additions as irrelevant and /or unsupported by the record.

Case 3:15-cv-00214-FDW-DSC   Document 56-2   Filed 10/07/15   Page 10 of 20

the mark is likely to cause confusion. *Swatch AG v. Beehive Wholesale, LLC*, 739 F.3d 150, 158 (4th Cir. 2014).

This Court finds that Plaintiff is likely to prove that its Wavy Lines Mark is valid and protectable. Plaintiff's '550 Registration is incontestable; consequently, it is evidence of the validity of the Wavy Lines Mark, of Plaintiff's ownership of the Mark, and of Plaintiff's exclusive right to use the Wavy Lines Mark in commerce. 15 U.S.C. § 1115(b). However, even incontestable marks may be challenged, including on the grounds asserted by Defendants in this action, such as that the mark is functional or has become generic or abandoned. Defendants bear the burden of overcoming this presumption of validity, yet Defendants did not adduce sufficient evidence in the briefing or at the Preliminary Injunction hearing that would support their arguments that the Wavy Lines Mark is invalid because of genericness, abandonment, or functionality.

The Court concludes that at this time, Defendants have not supported their genericness claim or functionality arguments with sufficient evidence to overcome the presumption of validity. ~~suggest that the Wavy Lines Mark is "a common name of a product or service" (*see Retail Services Inc. v. Freebies Pub.*, 364 F.3d 535, 538 (4th Cir. 2004)) or that the Wavy Lines Mark "denominate[s] a type, kind, genus or subcategory of goods" (*see Dayton Progress Corp. v. Lane Punch Corp.*, 917 F.2d 836, 839 (4th Cir. 1990)). Defendants have not supported their abandonment claim with sufficient evidence to suggest that the Wavy Lines Mark "has lost all significance as an indication of origin." See *Sweetheart Plastics, Inc. v. Detroit Forming, Inc.*, 743 F.2d 1039, 1047–1048 (4th Cir. 1984). Finally, Defendants have not offered sufficient evidence at this time to support their functionality arguments. The Supreme Court has held:~~

~~The functionality doctrine prevents trademark law, which seeks to promote competition by~~

protecting a firm's reputation, from instead inhibiting legitimate competition by allowing a producer to control a useful product feature. It is the province of patent law, not trademark law, to encourage invention by granting inventors a monopoly over new product designs or functions for a limited time, 35 U.S.C. §§ 154, 173, after which competitors are free to use the innovation. If a product's functional features could be used as trademarks, however, a monopoly over such features could be obtained without regard to whether they qualify as patents and could be extended forever (because trademarks may be renewed in perpetuity).

*Qualitex Co. v. Jacobson Prods. Co.*, 514 U.S. 159, 164-165 (U.S. 1995). Evidence of functionality may come from a variety of sources. It is widely recognized that the most persuasive evidence of functionality is the existence of a utility patent that discloses the design. The Supreme Court has opined that the existence of a "utility patent is strong evidence that the features therein claimed are functional." *TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 29, 121 S. Ct. 1255, 1260, 149 L. Ed. 2d 164 (2001). To be sure, *TrafFix* "does not require that a patent claim the exact configuration for which trademark protection is sought in order to undermine an applicant's assertion that an applied-for mark is not de jure functional." *In re Becton, Dickinson and Co.*, 675 F.3d 1368, 1377 (Fed. Cir. 2012). Indeed, *TrafFix* teaches that "statements in a patent's specification illuminating the purpose served by a design may constitute equally strong evidence of functionality." *Id*. In considering the question of functionality, the Court in *TrafFix* did not limit its analysis to the claims of the patent, but, for example, noted "[t]hese statements made in the patent applications and in the course of procuring the patents demonstrate the functionality of the design." *TrafFix*, 532 U.S. at 32. Moreover, once a design is found functional, the Court need not consider whether there are alternative available designs. *Id*.

at 33-34.

Defendants base their functionality defense, in part, on U.S. Patent No. 3,009,822; however, this patent does not support Defendants' claim of functionality because based on the preliminary injunction record the Court finds that at this time the '822 Patent does not provide sufficient evidence that the Wavy Lines Mark is either "essential to the use or purpose of" the non-woven reusable wipes to which it is applied or that "it affects the cost or quality of" those wipes. *See TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 24 (2001) (quoting *Qualitex Co. v. Jacobson Products Co.*, 514 U.S. 159, 165 (1995)). Plaintiff's witness, Dawn Huston, testified that the Wavy Lines Mark did not affect the cost or quality of Plaintiff's reusable wipes, although Ms. Huston conceded that she does not have the background, experience or knowledge to testify regarding the methods used to design, manufacture or produce non-woven fabrics. While Ms. Huston offered her personal opinion about whether the wavy line design allows the wipes to more effectively clean a surface, she did not testify, nor does she have the requisite knowledge to testify, whether the use of a wavy line design in the manufacturing process of the fabric, as disclosed in the '822 and '581 Patents, generates a fabric with improved softness, drape and hand. Ms. Huston also did not refute the testimony of Mr. Mattesky who testified that "the use of patterns, including continuous wavy or zig-zag shaped lies, on non-woven home cleaning wipes has been manufactured and sold since at least as early as 1935 and has been the subject of numerous patents." Mattesky Decl. at 11-12. Ms. Huston did however testify that improved softness, drape and hand are beneficial characteristics for a non-woven fabric, and therefore this Court finds that a design which would generate such beneficial characteristics would affect the quality of the product, and would therefore render the mark functional. However, at this time, and on this limited record, the Court finds that there is insufficient evidence of

13

~~functionality.~~

~~The evidence also revealed that Plaintiff, under the Miracloth brand sells its non-woven fabrics with different designs, with each designed fabric serving a different function. For example, its diamond shape design is used for its window cleaning cloths, whereas its "dot" patterned cloths are dusting cloths. Plaintiff's wavy line clothes are for its all-purpose cloths. This evidence tends to show that Plaintiff's designs are used to distinguish for a consumer the *type* of wipe that is being offered, rather than the *source* of the wipe. Such evidence lends support to Defendant's arguments regarding functionality, but the Court finds at this time that this evidence is insufficient to attack the validity of Plaintiff's registration, based on the current record.~~ As Defendants have not offered sufficient evidence to support their claims that the Wavy Lines Mark is invalid, this Court concludes that Plaintiff is likely to establish the first element of its claim, ownership of a valid and protectable trademark.

> **Commented [SH11]:** Object to Defendants' additions as irrelevant; Plaintiff voluntarily cedes its proposed language re genericness and functionality as well

This Court finds that Plaintiff is also likely to establish the second element of its infringement claim. A visual comparison of the reusable wipes at issue in this case shows that Defendants have used a design that it is similar to the Wavy Lines Mark.

Finally, this Court finds that Plaintiff has shown that it is likely to prove a likelihood of confusion. In determining the likelihood of confusion, courts in the Fourth Circuit apply the *Pizzeria Uno/Sara Lee* multi-factor test, which evaluates: (1) "the strength or distinctiveness of the mark;" (2) "the similarity of the two marks;" (3) "the similarity of the goods/services the marks identify;" (4) "the similarity of the facilities the two parties use in their businesses;" (5) "the similarity of advertising used by the two parties;" (6) "the defendant's intent;" (7) "actual confusion;" "(8) the quality of the defendant's product; and (9) the sophistication of the consuming public." *Pizzeria Uno Corp. v. Temple*, 747 F.2d 1522, 1527 (4th Cir. 1984) (setting forth factors one through seven); *Sara Lee Corp v. Kayser-Roth Corp.,* 81 F.3d 455, 463–64

14

(identifying factors eight and nine). Based on the ~~limited~~ record evidence and testimony, this Court finds that the first five factors and the ninth factor weigh in favor of Plaintiff. The other factors are at least neutral; however, the factors are not of equal importance, nor are they all relevant in every case. *Id*. Notably, at this time the important second, third, and fourth factors weigh in favor of Plaintiff. The marks appear similar, and they are sold on identical goods—non-woven reusable wipes. The parties also use identical facilities in their business: both Plaintiff's and Defendants' wipes are sold in nationwide retail chains. Given the weight of these factors and the pre-discovery status of this case, the Court finds that consumer confusion is likely and, accordingly, that all three elements necessary to show likelihood of success on the merits are established.

**B.   Plaintiff is likely to suffer irreparable harm without an injunction.**

In a Lanham Act trademark infringement case in the Fourth Circuit, "a presumption of irreparable injury is generally applied once the plaintiff has demonstrated likelihood of confusion, the key element in an infringement case." *Scotts Co. v. United Indus. Corp.*, 315 F.3d 264, 273 (4th Cir. 2002); *see also Rebel Debutante LLC v. Forsythe Cosmetic Grp., Ltd.*, 799 F. Supp. 2d 558, 579-80 (M.D.N.C. 2011) (noting that this "commonly-applied presumption" has not been altered by the Supreme Court's holding in *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006)). In this case, the Plaintiff and its predecessors-in-interest have been using the mark since 1942. Although the record contains no evidence as to how much has been spent, if any, in marketing the Wavy Line Mark itself, Plaintiff introduced testimony that over $1 million annually is spent on advertising and marketing products bearing the Wavy Lines Mark. The record does not establish to what extent this expenditure promoted the wavy line design or other characteristics or features of the

> **Commented [SH12]:** Object to Defendants' insertion of "limited" as irrelevant and inconsistent with the record

15

products, or the brand names such as the CLOROX or HANDI WIPES brands.

~~Ms. Huston testified as to her own prior experience as a consumer, concluding that she remembered the Wavy Line Mark in that context. There is no other evidence of consumer recognition of the product in the marketplace, of non-solicited third party media attention directed to the Wavy Line Mark, or of any customer review or third party comment mentioning the Wavy Line Mark.~~ . There is no evidence that a consumer anywhere has ever recognized the Wavy Line Mark as an indication of source, rather than an ornamental design, or a generic designation that the product is an all-purpose non-woven reusable wipe

> **Commented [SH13]:** Object to Defendants' additions as unnecessary and irrelevant

The Court concludes from the record evidence and testimony that the consumer confusion that is likely to result from Defendants' use of the wipes at issue would ~~be~~ cause irreparable harm, especially because it would be very difficult to quantify. ~~The Court finds that the three years of sales of the ARM & HAMMER wipes, and Plaintiff's delay of four months in pursuing the preliminary injunction do not militate against its findings of irreparable harm. The court does not find the third party evidence introduced by Defendants showing that the Plaintiff has been a non-exclusive source of products bearing the Wavy Line Mark, or the evidence that Plaintiff may in some cases have acquiesced to competing products bearing the mark to be sold in large quantities due to other business considerations, prevent Plaintiff from demonstrating that it is likely to suffer irreparable harm without a preliminary injunction. But see, Warner Lambert Co. v. McCrory's Corp., 718 F. Supp. 389, 393-394 (D.N.J. 1989) (the "conscious inattention on the part of Warner-Lambert towards private label brands that have virtually the same trade dress as McCrory's brand severely undercuts plaintiff's claim that it faces irreparable damage"); Parfums Stern, Inc. v. United States Customs Service, 575 F. Supp. 416, 421 (S.D. Fla. 1983) ("it can hardly be said at this~~

16

~~point that on the basis of the evidence adduced that Plaintiff would suffer irreparable harm if the subject goods were, like so many other shipments before them, permitted to enter the commerce of the United States~~").

C.    **The balance of equities tips in Plaintiff's favor.**

Courts considering preliminary injunctions must balance the immediate and irreparable harm to the plaintiff against any harm to the defendant. *Meineke Car Care Centers, Inc. v. Catton*, 3:10-CV-000234-RLV-DSC, 2010 WL 2572875 (W.D.N.C. June 24, 2010). The record evidence and testimony demonstrate that Plaintiff's Wavy Lines Mark has been in use for over seventy years and generates significant annual revenue for Plaintiff. Defendants have presented insufficient evidence that they would suffer harm that would counterbalance the likely irreparable harm to Plaintiff's goodwill and its revenue from its longstanding Wavy Lines Mark; therefore, the Court finds that the equities weigh in favor of Plaintiff.

D.    **A preliminary injunction would serve the public interest.**

Trademarks exist to protect the public from "being misled as to the identity of the enterprise from which goods and services are obtained." *AMP Inc. v. Foy*, 540 F.2d 1181, 1185–86 (4th Cir. 1976). Preventing trademarks from being used deceptively protects the public and serves the public interest. *Toolchex, v. Trainor*, 634 F. Supp. 2d 586, 594 (E.D. Va. 2008) (citing *Bowe Bell & Howell Co. v. Harris,* 145 F. App'x 401, 404 (4th Cir. 2005) (unpublished) (affirming a grant of a preliminary injunction)). In addition, protecting the interests of trademark owners serves the public interest. *Toolchex*, 634 F. Supp. 2d at 594 (citing *NaturaLawn of Am., Inc. v. W. Group, LLC*, 484 F.Supp.2d 392, 404 (D. Md. 2007)). Because enjoining Defendants' use of their wavy-lines design on non-woven reusable wipes

17

will protect the public from confusion, and protect Plaintiff's ownership interest in its Wavy Lines Mark, granting an injunction serves the public interest.

Finding that all four elements necessary for a preliminary injunction are established, the Court turns to the question of a bond. The Federal Rules of Civil Procedure state that a "court may issue a preliminary injunction … only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). The amount of bond is within the Court's discretion. *Pashby v. Delia*, 709 F.3d 307, 332 (4th Cir. 2013). Noting that Defendants have sold an annual average of 50,000 units of the accused Arm & Hammer® brand wipes over the past three years, at an estimated wholesale price of $1.50, the Court determines that an appropriate bond amount is $37,500 in view of the expedited schedule which will set this matter for trial in March.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Preliminary Injunction is **GRANTED.**

1. Defendants Church & Dwight, Karmin Group, Karmin Industries, BI-LO, their respective officers, agents, servants, and employees, and anyone acting in concert or participation with any of them are preliminarily ENJOINED from:

    a. directly or indirectly, manufacturing, producing, distributing, circulating, selling, offering to sell, promoting, or advertising any product that uses Plaintiff's Wavy Lines Mark, except for any products manufactured by Plaintiff or its authorized agents or licensees~~the Karmin Product~~; and

    > **Commented [SH15]:** Object – the term "Karmin Product" is undefined, and could permit Defendants to sell infringing wipes under a different brand or mark

    b. representing themselves, in any way, as authorized, by license, sponsorship, or otherwise, to use the Wavy Lines Mark.

2. Defendant Church & Dwight, its respective officers, agents, servants, employees and attorneys, and anyone acting in concert or participation with any of them are ENJOINED from:

a. directly or indirectly, licensing the Arm & Hammer® brand non-woven fabrics that use the Wavy Lines Mark, as defined and described in the above-referenced Complaint; and representing themselves, in any way, as authorized, by license, sponsorship, or otherwise, to use the Wavy Lines Mark.

3. Defendants Church & Dwight, Karmin Group, Karmin Industries and BI-LO shall cease all advertising, marketing, offering for sale, sales, and distribution of any product that uses Plaintiff's Wavy Lines Mark, except for any products manufactured by Plaintiff or its authorized agents or licensees~~the Karmin Product~~ within 10 calendar days of the entry of this Order. This Order and injunction shall remain in force and effective until a final disposition of this action, or further Order of this Court. [Commented [SH16]: Same objection as above]

4. Any inadvertent offering for sale of products bearing the Wavy Lines Mark including but not limited to a situation such as might occur if a clerk mistakenly restocked a returned product subject to this injunction, shall not be grounds for finding a violation of this injunction provided that Defendants take commercially reasonable steps to prevent such inadvertent sales.

5. ~~This Order shall only become effective once~~ Plaintiff shall provide~~s~~ security to the Court in the amount of $37,500. ~~If Plaintiff does not submit said security by October 15, 2015, this Order shall be DISMISSED.~~ [Commented [SH17]: Object to Defendants' changes]

IT IS SO ORDERED.

Signed: October ___, 2015

19

_____

20