UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:15-cv-00214-FDW-DSC

| | |
|---|---|
| PGI POLYMER, INC., | ) |
| Plaintiff/Counterclaim Defendant, | ) |
| v. | ) ORDER GRANTING MOTION FOR |
| | ) PRELIMINARY INJUNCTION |
| CHURCH & DWIGHT CO., INC., *et al.*, | ) |
| Defendants/Counterclaimants. | ) |

**THIS MATTER** is before the Court on Plaintiff's Motion for Preliminary Injunction (Docket No. 2). Upon consideration of the parties' briefs and the evidence and testimony presented at the preliminary injunction hearing on September 21, 2015, the Court grants the Plaintiff's motion and preliminarily enjoins the conduct of Defendants Church & Dwight Co., Inc. ("Church & Dwight"); Karmin Group, Karmin Industries (collectively, "the Karmin Parties"), and BI-LO, LLC ("LLC") as set forth in the following order.

**SUMMARY OF THE FACTS**

**A.    Procedural History**

Plaintiff PGI Polymer, Inc. ("PGI Polymer") is a North Carolina corporation with its headquarters in Charlotte. It is a wholly owned subsidiary of AVINTIV Specialty Materials, Inc. ("AVINTIV"), which manufactures non-woven textiles and also is headquartered in Charlotte.

On May 8, 2015, Plaintiff filed a Complaint (Docket No. 1) and a Motion for Preliminary Injunction (Docket No. 2) against Defendants Church & Dwight, the Karmin Parties, and BI-LO. Plaintiff's complaint included the following four claims, all of which were based on Plaintiff's

1

allegations that the Defendants had unlawfully used its trademark of repeating wavy lines extending across the entire surface of non-woven fabrics (the "Wavy Lines Mark"): 1) Trademark infringement under the Lanham Act, 2) Unfair competition under the Lanham Act, 3) Unfair and deceptive trade practices under North Carolina's statutes, and 4) Common law unfair competition and trademark infringement. Included as a Defendant in this Complaint and Motion was C&S Wholesale Grocers, Inc. ("C&S"), which Plaintiff has since voluntarily dismissed from this litigation (Docket No. 9).

After dismissing C&S, PGI Polymer filed a First Amended Complaint adding LaMi Products, Inc. ("LaMi") as a Defendant (Docket No. 13). After receiving the First Amended Complaint, LaMi voluntarily agreed to cease all sales of the allegedly infringing goods during the pendency of this action, so PGI Polymer did not move for a preliminary injunction against LaMi.

The parties met for a preliminary injunction hearing on September 21, 2015. At the hearing, Plaintiff clarified that it was seeking a preliminary injunction against Church & Dwight, the Karmin Parties, and BI-LO, but not against LaMi. The Defendants against whom the injunction was sought ("the Preliminary Injunction Defendants") were jointly represented by counsel. Both Plaintiff and the Preliminary Injunction Defendants presented evidence and argument. Plaintiff presented testimony from two witnesses: Todd Hess, Senior Intellectual Property Counsel for AVINTIV, and Dawn Huston, Director of Product Marketing, Wipes Americas for AVINTIV. In addition to the evidence cited in their brief, Defendants submitted the testimony declarations of Evan Karls, William Mattesky and Anthony Rentz.

**B.   Findings of Fact**

Plaintiff owns a registration for a trademark for a design made up of wavy lines

extending in contrasting colors along the surface of non-woven fabric goods such as reusable wipes (the "Wavy Lines Mark"). Plaintiff's witness testified that Plaintiff and its predecessors in interest have used the Wavy Lines Mark continuously in the United States since at least as early as March 1942, before any Defendant used a "wavy lines" design for non-woven fabrics. According to the United States Patent and Trademark Office records, the Wavy Lines Mark was first owned by Johnson & Johnson, which applied to register the Wavy Lines Mark with the United States Patent and Trademark Office (the "USPTO") on June 21, 1972. On October 27, 1981, the USPTO granted the Wavy Lines Mark registration on its Principal Register as U.S. Reg. No. 1,175,550 ("the '550 Registration"), and Plaintiff claims that this registration eventually was assigned to Plaintiff. The registration certificate depicts and describes the Wavy Lines Mark as follows:



*The mark consists of a design made up of wavy lines continuously extending across the entire surface of the goods, the lines being of a color which is readily discernible against the background upon which the trademark appears. The design in its entirety is the essential feature of the mark, no particular color or combination of colors being significant.*

Products bearing the Wavy Lines Mark generate significant revenue annually for Plaintiff. Through its related company, Chicopee, Inc. ("Chicopee"), Plaintiff sells non-woven-

fabric goods bearing the Wavy Lines Mark to commercial customers. Chicopee offers those goods in several colors to its commercial customers, including green-on-white, blue-on-white, red-on-white, and yellow-on-white. Plaintiff sells them in packaging bearing the Chix® trademark.

Plaintiff also sells large quantities of non-woven fabrics bearing the Wavy Lines Mark to its customer and authorized user, The Clorox Company ("Clorox,"), which, in turn, sells those goods in packaging bearing the Handi Wipes® trademark.

The Preliminary Injunction Defendants, for more than three years, have imported, sold, distributed and/or advertised non-woven reusable wipes, which were sold through major retail store chains under the Arm & Hammer® brand, and which employ a green and white wavy-lines design (the "Karmin Product"). Defendant Church & Dwight is the owner of the ARM & HAMMER brand and licensed the ARM & HAMMER brand for use with the Karmin Product.

Since June 2012, Karmin Industries has sold and distributed over 200,000 units of such wipes in the United States. The accused ARM & HAMMER wipes had been sold in the United States for approximately three years before Plaintiff pursued this motion for preliminary injunction. Decl. of E. Karls at ¶ 3. Plaintiff became aware of the sales of the ARM & HAMMER wipes, including in large chain supermarkets, in or around January, 2015, and four months later sought a preliminary injunction.

## CONCLUSIONS OF LAW

A preliminary injunction is an extraordinary remedy, the primary function of which is to protect the status quo and to prevent irreparable harm during the pendency of a lawsuit. *In re Microsoft Corp. Antitrust Litig.*, 333 F.3d 517, 525 (4th Cir. 2003). Courts evaluating a request for a preliminary injunction "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding such request." *Amoco Prod.*

4

*Co. v. Vill. of Gambell, Alaska*, 480 U.S. 531, 542 (1987). A plaintiff seeking a preliminary injunction must establish the following four elements: 1) it is likely to succeed on the merits; 2) it is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in its favor; and (4) an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). In this case, all four elements are established.

A.  **Plaintiff is likely to succeed on the merits.**

To prevail on a trademark infringement claim, the plaintiff must show that it owns a valid and protectable mark, that the defendants used a "re-production, counterfeit, copy, or colorable imitation" of that mark in commerce without the plaintiff's consent, and that use of the mark is likely to cause confusion. *Swatch AG v. Beehive Wholesale, LLC*, 739 F.3d 150, 158 (4th Cir. 2014).

This Court finds that Plaintiff is likely to prove that its Wavy Lines Mark is valid and protectable. Plaintiff's '550 Registration is incontestable; consequently, it is evidence of the validity of the Wavy Lines Mark, of Plaintiff's ownership of the Mark, and of Plaintiff's exclusive right to use the Wavy Lines Mark in commerce. 15 U.S.C. § 1115(b). However, even incontestable marks may be challenged, including on the grounds asserted by Defendants in this action, such as that the mark is functional or has become generic or abandoned. Defendants bear the burden of overcoming this presumption of validity, yet Defendants did not adduce sufficient evidence in the briefing or at the Preliminary Injunction hearing that would support their arguments that the Wavy Lines Mark is invalid because of genericness, abandonment, or functionality.

The Court concludes that at this time, Defendants have not supported their genericness claim or functionality arguments with sufficient evidence to overcome the presumption of validity. As Defendants have not offered sufficient evidence to support their claims that the

5

Wavy Lines Mark is invalid, this Court concludes that Plaintiff is likely to establish the first element of its claim, ownership of a valid and protectable trademark.

This Court finds that Plaintiff is also likely to establish the second element of its infringement claim. A visual comparison of the reusable wipes at issue in this case shows that Defendants have used a design that it is similar to the Wavy Lines Mark.

Finally, this Court finds that Plaintiff has shown that it is likely to prove a likelihood of confusion. In determining the likelihood of confusion, courts in the Fourth Circuit apply the *Pizzeria Uno/Sara Lee* multi-factor test, which evaluates: (1) "the strength or distinctiveness of the mark;" (2) "the similarity of the two marks;" (3) "the similarity of the goods/services the marks identify;" (4) "the similarity of the facilities the two parties use in their businesses;" (5) "the similarity of advertising used by the two parties;" (6) "the defendant's intent;" (7) "actual confusion;" "(8) the quality of the defendant's product; and (9) the sophistication of the consuming public." *Pizzeria Uno Corp. v. Temple*, 747 F.2d 1522, 1527 (4th Cir. 1984) (setting forth factors one through seven); *Sara Lee Corp v. Kayser-Roth Corp.,* 81 F.3d 455, 463–64 (identifying factors eight and nine). Based on the record evidence and testimony, this Court finds that the first five factors and the ninth factor weigh in favor of Plaintiff. The other factors are at least neutral; however, the factors are not of equal importance, nor are they all relevant in every case. *Id*. Notably, at this time the important second, third, and fourth factors weigh in favor of Plaintiff. The marks appear similar, and they are sold on identical goods—non-woven reusable wipes. The parties also use identical facilities in their business: both Plaintiff's and Defendants' wipes are sold in nationwide retail chains. Given the weight of these factors and the pre-discovery status of this case, the Court finds that consumer confusion is likely and, accordingly, that all three elements necessary to show likelihood of success on the merits are established.

**B.      Plaintiff is likely to suffer irreparable harm without an injunction.**

In a Lanham Act trademark infringement case in the Fourth Circuit, "a presumption of irreparable injury is generally applied once the plaintiff has demonstrated likelihood of confusion, the key element in an infringement case." *Scotts Co. v. United Indus. Corp.*, 315 F.3d 264, 273 (4th Cir. 2002); *see also Rebel Debutante LLC v. Forsythe Cosmetic Grp., Ltd.*, 799 F. Supp. 2d 558, 579-80 (M.D.N.C. 2011) (noting that this "commonly-applied presumption" has not been altered by the Supreme Court's holding in *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006)). In this case, the Plaintiff and its predecessors-in-interest have been using the mark since 1942. Although the record contains no evidence as to how much has been spent, if any, in marketing the Wavy Line Mark itself, Plaintiff introduced testimony that over $1 million annually is spent on advertising and marketing products bearing the Wavy Lines Mark. The record does not establish to what extent this expenditure promoted the wavy line design or other characteristics or features of the products, or the brand names such as the CLOROX or HANDI WIPES brands.

The Court concludes from the record evidence and testimony that the consumer confusion that is likely to result from Defendants' use of the wipes at issue would cause irreparable harm, especially because it would be very difficult to quantify.

**C.  The balance of equities tips in Plaintiff's favor.**

Courts considering preliminary injunctions must balance the immediate and irreparable harm to the plaintiff against any harm to the defendant. *Meineke Car Care Centers, Inc. v. Catton*, 3:10-CV-000234-RLV-DSC, 2010 WL 2572875 (W.D.N.C. June 24, 2010). The record evidence and testimony demonstrate that Plaintiff's Wavy Lines Mark has been in use for over seventy years and generates significant annual revenue for Plaintiff. Defendants have presented insufficient evidence that they would suffer harm that would

counterbalance the likely irreparable harm to Plaintiff's goodwill and its revenue from its longstanding Wavy Lines Mark; therefore, the Court finds that the equities weigh in favor of Plaintiff.

**D.     A preliminary injunction would serve the public interest.**

Trademarks exist to protect the public from "being misled as to the identity of the enterprise from which goods and services are obtained." *AMP Inc. v. Foy*, 540 F.2d 1181, 1185–86 (4th Cir. 1976). Preventing trademarks from being used deceptively protects the public and serves the public interest. *Toolchex, v. Trainor*, 634 F. Supp. 2d 586, 594 (E.D. Va. 2008) (citing *Bowe Bell & Howell Co. v. Harris,* 145 F. App'x 401, 404 (4th Cir. 2005) (unpublished) (affirming a grant of a preliminary injunction)). In addition, protecting the interests of trademark owners serves the public interest. *Toolchex*, 634 F. Supp. 2d at 594 (citing *NaturaLawn of Am., Inc. v. W. Group, LLC*, 484 F.Supp.2d 392, 404 (D. Md. 2007)). Because enjoining Defendants' use of their wavy-lines design on non-woven reusable wipes will protect the public from confusion, and protect Plaintiff's ownership interest in its Wavy Lines Mark, granting an injunction serves the public interest.

Finding that all four elements necessary for a preliminary injunction are established, the Court turns to the question of a bond. The Federal Rules of Civil Procedure state that a "court may issue a preliminary injunction … only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). The amount of bond is within the Court's discretion. *Pashby v. Delia*, 709 F.3d 307, 332 (4th Cir. 2013). Noting that Defendants have sold an annual average of 50,000 units of the accused Arm & Hammer® brand wipes over the past three years, at an estimated wholesale price of $1.50, the Court

determines that an appropriate bond amount is $37,500 in view of the expedited schedule which will set this matter for trial in March.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Preliminary Injunction is **GRANTED.**

1. Defendants Church & Dwight, Karmin Group, Karmin Industries, BI-LO, their respective officers, agents, servants, and employees, and anyone acting in concert or participation with any of them are preliminarily ENJOINED from:

    a. directly or indirectly, manufacturing, producing, distributing, circulating, selling, offering to sell, promoting, or advertising any product that uses Plaintiff's Wavy Lines Mark, except for any products manufactured by Plaintiff or its authorized agents or licensees; and

    b. representing themselves, in any way, as authorized, by license, sponsorship, or otherwise, to use the Wavy Lines Mark.

2. Defendant Church & Dwight, its respective officers, agents, servants, employees and attorneys, and anyone acting in concert or participation with any of them are ENJOINED from:

    a. directly or indirectly, licensing the Arm & Hammer® brand non-woven fabrics that use the Wavy Lines Mark, as defined and described in the above-referenced Complaint;

    b. and representing themselves, in any way, as authorized, by license, sponsorship, or otherwise, to use the Wavy Lines Mark.

3. Defendants Church & Dwight, Karmin Group, Karmin Industries and BI-LO

shall cease all advertising, marketing, offering for sale, sales, and distribution of any product that uses Plaintiff's Wavy Lines Mark, except for any products manufactured by Plaintiff or its authorized agents or licensees within 10 calendar days of the entry of this Order. This Order and injunction shall remain in force and effective until a final disposition of this action, or further Order of this Court.

4. Any inadvertent offering for sale of products bearing the Wavy Lines Mark including but not limited to a situation such as might occur if a clerk mistakenly restocked a returned product subject to this injunction, shall not be grounds for finding a violation of this injunction provided that Defendants take commercially reasonable steps to prevent such inadvertent sales.

5. This Order shall only become effective once Plaintiff provides security to the Court in the amount of $37,500.

IT IS SO ORDERED.

Signed: October 8, 2015

Frank D. Whitney
Chief United States District Judge