UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| PGI POLYMER, INC., <br><br> Plaintiff, <br><br> v. <br><br> CHURCH & DWIGHT CO., INC. et al. <br><br> Defendants/Counterclaim Plaintiffs. | Civil Action No.: <br> 3:15-CV-0214 <br> (FDW)(DSC) |

# DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO VACATE THE PRELIMINARY INJUNCTION

Defendants Church & Dwight Co., Inc., Karmin Industries, Karmin Group and BI-LO, LLC[1] ("Defendants") respectfully request that the preliminary injunction [Doc. 58], which this Court issued based on the limited and incomplete evidentiary record available at the outset of the litigation, be lifted. Discovery is closed and the Court now has the benefit of a robust evidentiary record. Plaintiff cannot, based on the record now before the Court, make a "***clear showing***" that it is likely to succeed on the merits. In the absence of Plaintiff's ability to make a clear showing of a likelihood of success on the merits, Defendants are entitled to have the taint of a preliminary injunction order lifted, and should be allowed to present their defenses and counterclaims at trial on a level playing field.

---

[1] A preliminary injunction was not sought, or obtained against any of the other Defendants in this lawsuit.

The Supreme Court has strongly cautioned that "[a] preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. NRDC, Inc.*, 555 U.S. 7, 24 (2008). The summary judgment record shows that this is not an "***extraordinary***" case. At best, it is a very ordinary trademark case - and one in which the record shows a finding of infringement is very unlikely.

Because "a preliminary injunction affords, on a temporary basis, the relief that can be granted permanently after trial, the party seeking the preliminary injunction must demonstrate by 'a clear showing' that, among other things, it is likely to succeed on the merits at trial."[2] *Real Truth About Obama, Inc. v. FEC*, 575 F.3d 342, 345-347 (4th Cir. 2009) (emphasis added). The decision whether to modify a preliminary injunction involves an exercise of the same discretion that a court employs in an initial decision to grant or deny a preliminary injunction. *Weight Watchers Int'l v. Luigino's, Inc.*, 423 F.3d 137, 141 (2d Cir. 2005).

### A. Plaintiff Cannot <u>Clearly</u> Show a <u>Likelihood</u> of Success on the Merits

The record on summary judgment now shows that there is nothing extraordinary about Plaintiff's claims in this lawsuit. Plaintiff chose not to support its claims with a likelihood of

---

[2] During the summary judgment hearing Defendants also explained that the wavy lines ARM & HAMMER wipes product is no longer being manufactured or sold. The Court suggested that on this basis alone it may be possible to vacate the Preliminary Injunction on the grounds that it has become moot. In a subsequent telephone conference, the Court indicated that a motion to lift the PI on the basis of mootness would need to be supported by declarations by each of the Defendants, which would then possibly require a new evidentiary hearing so that Plaintiff could cross-examine each of the witnesses. As the Court is aware, Defendants cannot afford to expend resources on a second preliminary injunction hearing, nor could it justify the costs and inconvenience of having every company send a representative to travel to North Carolina for this purpose (for example, the costs of traveling to, preparing for, and attending the hearing would exceed BI-LO's total sales of the accused product). Accordingly, Defendants are not moving to vacate the PI on grounds that it is moot.

confusion survey. Ex. E at 52. The only likelihood of confusion survey evidence in this case is that of the Defendants, which is faithful to the *Eveready* (i.e. gold standard) format. The Defendants' likelihood of confusion survey shows that less than 1% of consumers are likely to be confused. Ex. A.[3] In the Fourth Circuit, survey evidence clearly favors the defendant when it demonstrates a level of confusion much below ten percent. *Sara Lee Corp. v. Kayser-Roth Corp.*, 81 F.3d 455, n.15 (4th Cir. 1996). Plaintiff cannot make a clear showing of a likelihood of success on the merits when the only survey of confusion shows that less than 1% of consumers are likely to be confused.

Moreover, Plaintiff has also failed to come forth with any evidence of actual confusion. In this Circuit, actual confusion is considered to be the "most important factor" in a likelihood of confusion analysis. *Swatch AG v. Beehive Wholesale, LLC*, 739 F.3d 150, 162 (4th Cir. 2014). The absence of any evidence of actual confusion creates a strong inference that there is no likelihood of confusion. *CareFirst of Md., Inc. v. First Care, P.C.*, 434 F.3d 263, 269 (4th Cir. 2006). The record in this case includes declarations from thirteen parties and non-parties who confirmed that they are not aware of any confusion arising from sales of wavy lines wipes. Exs. G-S. Indeed, Plaintiff and its customer Clorox (the alleged seller of the HANDI WIPES product) also confirmed that there have been no instances of actual confusion. Exs. T at ¶ 7 and U at 10-11.

Plaintiff argues that consumers will look to the wavy lines as an indication of source when purchasing non-woven fabrics. But despite a purported 70 years of sales, Plaintiff and its customer Clorox have not identified a single occasion when this has ever happened. In its

---

[3] References to Exhibits A-SS refer to those exhibits as submitted to the Court in support of Defendants' summary judgment briefs at D.E. 113-115, 126, 127 and 136.

response to Defendants' Interrogatories, Plaintiff admitted that there is not a single "*documented instance where a consumer, or a potential consumer, made reference to the Wavy Lines Mark in connection with the consumer's purchase, use or consideration of a non-woven fabric.*" Ex. CC at 10. Clorox also concedes that "*[a]fter a diligent search, Clorox did not locate any documents or information reflecting any consumer communications referencing or referring to the Alleged Wavy Lines Mark or a wavy lines pattern on a Handi Wipes product.*" Ex. T at ¶10.

While Plaintiff represented to the Court at the Preliminary Injunction hearing that Plaintiff actively advertises and markets its wavy lines mark, the present record after summary judgment does not include a single advertisement or media reference. Plaintiff only produced three legal publications directed to lawyers, and which only discussed the lawsuits that were filed in this Court. This record now demonstrates that the consuming public is not exposed to advertisements for wavy lines wipes.

Plaintiff also cannot make a clear showing on the intent factor. Prior to this lawsuit, none of the Defendants had knowledge of Plaintiff's mark, and none of the Defendants acted in bad faith. D.E. 114 at 12 (citing, Ex. G at ¶¶ 7-8; Ex. H – O; Ex. C at 64-75, 97-117). Without knowledge of the mark, there could be no bad intent or willfulness. The Defendants' Intent factor favors Defendants.

Finally, and most important, is that the accused ARM & HAMMER wipes when viewed as they actually appear in the marketplace, look remarkably different from Plaintiff's product:

4

 

Plaintiff's own expert has testified that consumers encountering the ARM & HAMMER wipes are likely to be "swamped" by the famous ARM & HAMMER logo and orange trade dress, and are will probably not even notice the wavy line design. Ex. E at 135-37. Even if a consumer could find similarities in the two wavy line designs, there is no confusion as to *source*, because consumers can distinguish between purchasing an ARM & HAMMER product and purchasing a product branded as CLOROX or HANDI WIPES. This point was proven by the only survey evidence which shows a rate of less than 1% confusion. This has not been refuted by Plaintiff.

The other likelihood of confusion factors were discussed in the parties' respective summary judgment briefs, and these other factors either further support Defendants' position, or are wholly insufficient to overcome the core factors discussed above which strongly favor Defendants. D.E. 114 at 7-12; D.E. 126 at 2-6 and D.E. 136 at 1-4.

5

Moreover, the record shows serious questions as to the validity of Plaintiff's alleged mark. Plaintiff seeks to monopolize "all color" as applied to a design that it has disclaimed and has placed in the public domain. D.E. 124 at 18 (only "***colored*** wavy lines infringe PGI's Mark"). Under *Qualitex,* Plaintiff could have perhaps sought trademark protection for a ***single*** color as applied to the disclaimed wavy line pattern. But Plaintiff went too far. Trademark laws do not protect a monopoly of ***all*** colors applied to a disclaimed and functional pattern. *See, Qualitex Co. v. Jacobson Prod. Co., Inc.,* 514 U.S. 159, 169 (1995) (" if a 'color depletion' or 'color scarcity' problem does arise – the trademark doctrine of 'functionality' normally would seem available to prevent the anticompetitive consequences that [defendant's] argument posits").

### B. Plaintiff Has Not Clearly Shown Irreparable Harm

The record shows that millions of units of third party wipes bearing a wavy line design have been sold, dating back more than a decade. Exs. P-S, AA and BB. These wipes have been sold throughout the United States in large, mass-volume retail stores. *Id.* Plaintiff has not shown that Defendants' sales of the ARM & HAMMER wipes has created the level of harm, let alone irreparable harm, which is required to support a preliminary injunction. This is particularly true in light of the prevalence of other third party wipes with wavy lines designs, and the fact that the confusion survey shows that less than 1% of consumers are likely to be confused as to the source of the ARM & HAMMER wipes.

As to the quality of the Parties' products, the record shows that the ARM & HAMMER wipes were at least equal, if not of higher, quality than Plaintiff's wipes. Ex. B at 33-34 ("the wipes sold under the ARM & HAMMER brand . . . were not of inferior quality when compared

6

to the wipes sold under the HANDI WIPES and MIRACLOTH brands, and seemed more durable"); *see also,* Ex. C at 64-65 (admitting that PGI never compared the quality of its wipes to the ARM & HAMMER wipes).

### C. Plaintiff Cannot Clearly Show that the Balance of Equities and the Public Interest Tips in Favor of Maintaining this Preliminary Injunction

For the reasons discussed above, and particularly because Plaintiff's proof cannot rise to a level of a "likelihood" of success as to: (a) the validity of its mark; and (b) the likelihood of confusion, the Preliminary Injunction should be vacated. The Defendants have the right to fairly compete in the marketplace and present their defenses and claims to a jury without the taint of a preliminary injunction.

This the 27th day of April, 2016

Respectfully submitted,

**COLLEN IP**

/s/ Jeffrey A. Lindenbaum
Jeffrey A. Lindenbaum
*Admitted Pro Hac Vice*
Lisa A. McAndrews
*Admitted Pro Hac Vice*
Joshua Paul
*Admitted Pro Hac Vice*
COLLEN IP
The Holyoke-Manhattan Building
80 South Highland Avenue
Ossining, New York 10562
Telephone: (914) 941 5668
Facsimile: (914) 941-6091
E-mail: jlindenbaum@collenip.com
lmcandrews@collenip.com
jpaul@collenip.com

**TREGO, HINES & LADENHIEM, PLLC**

/s/ Matthew J. Ladenheim
Matthew J. Ladenheim
NC State Bar No. 29309
TREGO HINES & LADENHEIM, PLLC
9300 Harris Corners Parkway Suite 210
Charlotte, North Carolina 28269
Telephone: 704-599-8911
Facsimile: 704-599-8719
E-mail:mjl@thlip.com
*Counsel for Defendants /Counterclaim Plaintiffs*

## CERTIFICATE OF SERVICE AND WORD-LIMIT COMPLIANCE

I hereby certify that on April 27, 2016, I electronically filed the foregoing "Memorandum of Law in Support of Defendants Motion for Summary Judgment" with the Clerk of Court using the CM/ECF system. Service of the same on Plaintiff will be accomplished through the Notice of Electronic Filing, in accordance with LCvR 5.3.

I further certify that the foregoing memorandum of law contains 1,741words.

/s/ Matthew J. Ladenheim
Matthew J. Ladenheim
NC State Bar No. 29309
TREGO HINES & LADENHEIM, PLLC
9300 Harris Corners Parkway Suite 210
Charlotte, North Carolina 28269
Telephone: 704-599-8911
Facsimile: 704-599-8719
E-mail: mjl@thlip.com
  *Counsel for Defendants/Counterclaim Plaintiffs*